UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     SIMON BEN-AMI | ) | Case No. 06-10146-SSM |
| | ) | Chapter 11 |
|                     Debtor | ) | |
| | ) | |
| SIMON BEN-AMI | ) | |
| | ) | |
|                     Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 06-1119 |
| | ) | |
| DANIEL KATZ | ) | |
| | ) | |
|                     Defendant | ) | |

**CORRECTED MEMORANDUM OPINION**[*]

      Before the court is the motion of the defendant, Daniel Katz, to dismiss the complaint for failure to state a claim for relief, or, in the alternative, to grant summary judgment. This is an action by a chapter 11 debtor-in-possession, Simon Ben-Ami, objecting to two secured claims filed by Mr. Katz in the aggregate amount of $672,419—one arising from a recorded deed of trust against the debtor's townhouse, and the other from a judgment confirming an arbitration award—and seeking release of both the deed of trust and judgment lien. The court heard argument from the parties at a hearing on June 14, 2006, and took the motion under advisement. For the reasons stated, the court will deny the motion to dismiss and the

---

[*] This opinion incorporates the corrections to the original opinion of July 7, 2006, made by the order of August 16, 2006.

1

motion for summary judgment as they relate to the deed of trust, but will grant the motion for summary judgment as it relates to the judgment lien.

Background

Simon Ben-Ami ("the debtor") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code in this court on February 23, 2006. Among the assets listed on his schedules is a townhouse located at 2021 Winged Foot Court, Reston, Virginia, valued at $400,000. The scheduled liens against the property include a judgment in favor of Daniel Katz in the amount of $194,000 and a deed of trust held by Mr. Katz in the amount of $138,000, both of which are scheduled as disputed.[1] Mr. Katz has filed proofs of claim in considerably higher amounts with respect to both debts.[2] After confirmation of the proposed chapter 13 plan was denied (primarily because the debtor's liquidated, non-contingent debts exceeded the debt limits for chapter 13), the debtor moved to convert his case to chapter 11. The case was converted on June 16, 2006, and Mr. Ben-Ami remains in possession of his estate as a debtor in possession.

This is Mr. Ben-Ami's second bankruptcy filing in this court. He previously filed a chapter 7 petition in this court on January 18, 2003. *In re Simon Benami*, No. 03-10116-RGM. After the trustee moved to sell the debtor's interest in the Winged Foot Court property, the debtor successfully moved to convert that case to chapter 11. The case was reconverted to chapter 7 after his motion to continue the meeting of creditors was denied and

---

[1] The schedules also reflect a first lien deed of trust in the amount of $13,000 and a judgment in the amount of $2,376, neither of which is disputed.

[2] Claim No. 4 in the amount of $355,741.79 is based on the judgment. Claim No. 5 in the amount of $316,676.92 is based on the note and deed of trust.

2

he did not appear. The case was subsequently reconverted to chapter 11, however, and a chapter 11 plan and disclosure statement were filed. After approval of the disclosure statement was denied, the case was dismissed on June 23, 2004, on motion of the United States Trustee. The schedules filed by the debtor in the first case list both of the claims now at issue as undisputed, and the disclosure statement in that case likewise treated both claims as valid.

The judgment lien arises from a judgment entered by the Superior Court of the District of Columbia on December 16, 1996, confirming an arbitration award in favor of Mr. Katz by the District of Columbia Attorney-Client Arbitration Board. The judgment was docketed in the Fairfax County, Virginia, land records on January 10, 1997. Subsequent to obtaining the judgment, Mr. Katz purchased a note secured by a second deed of trust that was of record against the property. The note, which is dated November 20, 1991, is in the original principal amount of $138,000; provides for interest at 9% per annum; and requires monthly payments of $1,110.38 until February 1, 1993, when the entire balance became due. The note was secured by two parcels of real property: the Winged Foot Court townhouse, and a separate parcel located in Rockville, Maryland. The payee and original noteholder was Harry Feldgreber, who at the time the note was signed was the debtor's father-in-law and is now deceased. A certificate of satisfaction was recorded in the Montgomery County, Maryland, land records in 1993 reciting that the indebtedness secured by the Maryland deed of trust had been paid in full and releasing the Maryland deed of trust. The certificate of satisfaction did not mention the Virginia deed of trust or the Virginia property, and no release has been filed in Virginia.

3

Prior to the filing of the chapter 13 petition, Mr. Katz filed a creditor's bill in the Circuit Court of Fairfax County, Virginia, to enforce the lien of his judgment by sale of the property. The debtor filed an answer challenging the judgment. On Mr. Katz's motion, the state court, by order entered October 7, 2005, struck the debtor's defenses and ruled:

> The court finds and enters judgment on the validity of Katz's debt based on judicial estoppel arising from the Bankruptcy Court documents and the order tendered into evidence, as well as for the other reasons in plaintiff's motion.

The state court also—apparently as a sanction for pleading the defenses in the first instance—ordered the debtor to pay $1,650.00 in fees to Mr. Katz's attorneys. The state court suit was stayed by the filing of the chapter 13 petition.

The present action was commenced by the debtor on May 26, 2006. The debtor's pleading is entitled "Objection to Claims of Daniel Katz and Motion to Value Liens." Since the motion sought a ruling as to the extent and validity of Mr. Katz's liens, the court directed the clerk to treat the motion as a complaint and to open an adversary proceeding.[3] Mr. Katz has responded by filing the motion to dismiss and motion for summary judgment that is currently before the court. The debtor did not file a response to the motion until more than a week after the hearing.[4]

---

[3] *See* Fed. R. Bankr. P. 7001(2). The only exception to the requirement for an adversary proceeding is a proceeding under Rule 4003(d) for lien avoidance under § 522(f), Bankruptcy Code. A proceeding to value a secured creditor's *collateral* (as opposed to determining the validity of its lien) may likewise be brought by motion. Fed. R. Bankr. P. 3012. The present proceeding, however, does not fall within either exception.

[4] The local rules of this court require that responses to motions "must be in writing, state with particularity the grounds [for opposing the motion], be filed with the Court and served upon all parties affected thereby[.]" LBR 9013(H)(1). Where no hearing has been set or requested, the response and supporting memorandum must be filed within 10 days. LBR
(continued...)

Discussion

I.

A complaint may be dismissed at the outset of the litigation if it fails to state a claim upon which relief may be granted. Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(b)(6). The Supreme Court has cautioned, however, that a complaint may not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court has further explained:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.... [I]t is well established that, in passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff is not required to plead *evidence* sufficient to establish a *prima facie* case but under Rule 8(a) is required only to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Under this relaxed

---

[4](...continued)
9013(H)(3)(a). Where a hearing has been set on at least 20 days notice, the response is due five business days prior to the hearing; otherwise it is due two business days prior. LBR 9013(H)(3)(a) & (b). In the absence of a timely response, "the Court may deem the opposition waived, treat the motion . . . as conceded, and enter an appropriate order granting the requested relief." LBR 9013(H)(4).

standard, unmeritorious claims and attempts at surprise are eliminated not by motions to dismiss but through liberal discovery rules and summary judgment motions. *Id.* at 512–13.

Motions for summary judgment under Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056, are normally brought after the parties are at issue and after a reasonable opportunity for discovery. The plain language of the rule, however, permits a defending party to bring such a motion "at any time" and does not specifically require that the parties be at issue.[5] Fed. R. Civ. P. 56(b). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, a court should believe the evidence of the non-movant, and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. Although a moving defendant has the burden of showing that there is no genuine issue of fact, the plaintiff is not thereby relieved of his own burden of producing evidence that would support a jury verdict in his favor. *Id.* at 256, 106 S.Ct. at 2514. In meeting this burden, the plaintiff may not rely upon the mere allegations of his

---

[5] The non-moving party, however, is protected against an overly-precipitous motion for summary judgment by Rule 56(f), which allows the party opposing the motion to file an affidavit showing why the party cannot present by affidavit facts essential to justify the party's opposition, in which event the court may order a continuance to permit affidavits to be obtained, depositions to be taken, or discovery to be had. No such affidavit was filed by the plaintiff.

pleadings but must, "by affidavits or as otherwise provided [in Rule 56] . . . set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1985). With these principles in mind, the court will address the two claims separately.

## II.  The Note and Deed of Trust

### A.

The complaint alleges that the note secured by the deed of trust against the Winged Foot Court property "has been paid in full" and in support of that position attaches the certificate of satisfaction that was recorded in Maryland reciting that "the indebtedness . . . has been fully paid and discharged." The certificate bears the purported signature of Harry Feldgreber and is dated June 23, 1993. Since the complaint plainly sets forth sufficient grounds for the release of the deed of trust—namely the satisfaction of the underlying indebtedness—the motion to dismiss for failure to state a claim for relief must be denied.

### B.

The motion for summary judgment fares no better. Summary judgment, as discussed, is appropriate only where no material facts are genuinely in dispute. The certificate of satisfaction, while not dispositive on the issue, is certainly evidence that Harry Feldgreber considered the promissory note satisfied. Against that, Mr. Katz cites only (1) the admissions made by the debtor in the schedules and disclosure statement filed in the first

7

bankruptcy case that the debt (then held by Mr. Feldgreber's widow) was undisputed and (2) the state court order striking the debtor's defenses and entering judgment that the debt was valid. Mr. Katz argues that as a result of these, the debtor is both judicially and collaterally estopped from now denying the validity of the mortgage debt.[6]

The court will first address the judicial estoppel argument. That the schedules and disclosure statement filed in the first case constitute evidentiary admissions is beyond dispute. That the debtor is judicially estopped from now denying them, however, is far less certain. In this circuit, judicial estoppel requires the following showing:

> First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. And the position sought to be estopped must be one of fact rather than law or legal theory. Second, the prior inconsistent position must have been accepted by the court.. . . Finally, the party sought to be estopped must have "intentionally misled the court to gain unfair advantage."

*Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) (internal citations omitted). There can be no question that the debtor is taking a position in this case that is diametrically opposed to the position he took in his first case. Whether that position—the validity of the debt—is properly characterized as a "fact" is less clear, but the court assumes for the purpose of the present motion that it is. The fundamental problem, however, is that there is no showing that the validity of the debt was ever "accepted by the court" in the first case. As the Fourth Circuit has explained, "[t]he insistence upon a court having accepted the party's prior

---

[6] At oral argument, Mr. Katz also raised the issue of equitable estoppel, stating that he had relied on the scheduling of the Feldgreber note and deed of trust in the first case as undisputed in making the decision to purchase them. Since this position was not set forth in the moving papers, and since the predicate fact of reliance is not supported by affidavit, the court declines to consider whether equitable estoppel would bar the debtor from now denying the validity of the debt.

inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances." *Id*. The first bankruptcy case was dismissed without confirmation of a plan. Mr. Katz has pointed to no ruling in the first case that relied on the validity of the second deed of trust. A very different situation would be presented if, for example, a plan had been confirmed in the first case providing for little or no distribution to unsecured creditors or the stripping off of a lien junior to the deed of trust based on a lack of equity in the property. But that did not happen. Because the "prior success rule" is not satisfied, the court need not reach the final element of judicial estoppel, which asks whether the debtor "intentionally misled the court to gain unfair advantage." *Lowery*, 92 F.3d at 224 (citing *Tenneco Chemicals, Inc. v. William T. Burnett & Co.,* 691 F.2d 658, 665 (4th Cir. 1982)).[7]

The court will next address the collateral estoppel argument arising from the state court order adjudicating the debt to be valid. Collateral estoppel, or issue preclusion, bars a party from relitigating issues that have been finally determined in prior litigation between the same parties. To establish collateral estoppel under Virginia law: (1) the parties to the two actions must be the same; (2) the factual issue must have been actually litigated in a

---

[7] Although the debtor, both in his complaint and in the belated response filed to the summary judgment motion, asserts that he listed the debt as undisputed in the first case only because he did not have access to the documents to prove otherwise, that explanation is not set forth in an affidavit or declaration under penalty of perjury. A party defending against a properly-supported summary judgment motion cannot show the existence of a factual dispute merely by resting on his pleadings but must, "by affidavits or as otherwise provided by [Rule 56] . . . set forth specific facts showing that there is a genuine issue for trial." A brief is not an affidavit, and statements of fact set forth in a brief, unless conceded by the other party, are insufficient to defeat summary judgment. Thus, if the "prior success" requirement for judicial estoppel had been met, the court would be unable to consider the debtor's explanation of why he had changed his position, because that explanation is not supported by affidavit.

prior proceeding; (3) the issue must have been essential to the prior judgment; and (4) the proceeding must have resulted in a valid final judgment against the party to be estopped. *Levine v. McLeskey*, 164 F.3d 210, 213 (4th Cir 1998). Here, there is no question that the parties are the same. Whether the state court ruling can be considered a factual determination is again far from clear, but assuming that it was, it was certainly essential to the ruling that was made. The problem, however, is that the state court order is plainly interlocutory (except, presumably, with respect to the attorney's fee award). In the absence of a final judgment, there is no basis for applying collateral estoppel.

In sum, neither judicial estoppel nor collateral estoppel bars the debtor from asserting that the indebtedness secured by the deed of trust has been satisfied. For that reason, summary judgment in Mr. Katz's favor on that claim must be denied.

III.   The Judgment Confirming the Arbitration Award

A.

The allegations in the complaint with respect to the arbitration award and judgment may be briefly summarized. The debtor, then president of a company known as Optica Technologies, Inc. ("OTI"), hired Mr. Katz, an attorney practicing in the District of Columbia, to represent the company on an hourly fee basis plus reimbursable expenses with respect to otherwise unspecified "ongoing litigation, contract disputes and other related matters" and to provide legal advice to assist the debtor in representing himself. The retainer agreement stated that it was governed by the laws of the District of Columbia and that any suit relating to it would take place within the District of Columbia. The complaint alleges that there were two additional retainer agreements, for a total of three. The terms of

the second are not set forth in the complaint. Copies of the first and third are attached to the complaint. The third recites that it is intended to "add to the prior agreements" between Mr. Katz's firm, the debtor, and one Amir Shalit, whom the complaint describes as being "involved with" OTI. The third agreement states:

> To recap what has already transpired, we have agreed to represent yourself, Mr. Shalit, and OTI in connection with the defense of the U.S. Design matter and to interpose counterclaims limited to the expenses and damages caused by the U.S. Design suit. Thus, none of you will be appearing Pro Se, and we have agreed to waive our normal retainer and represent all of you, notwithstanding the fact that it is unlikely that our bills will be paid in full in a timely manner, *subject to a cap of $50,000.00 total outstanding at any one time.*

(emphasis added). The agreement goes on to recite that the law firm will also pursue the debtor's "claims of ownership" against a Mr. McCrory and U.S. Design on "an hourly/contingency arrangement" whereby the law firm would receive "as additional compensation, 50% of all sums and property obtained" on the debtor's behalf. The agreement recites that "[t]here will be no cap on services to be performed for this part of the suit" and further provides that "[b]ecause" payment of the contingent portion . . . will depend upon resolution of such claims, any settlement of the claims of ownership will require consent and approval of yourself and myself to protect the interests of [the law firm]."

The complaint alleges that Mr. Katz subsequently brought a law suit against the debtor for unpaid legal fees and that the dispute went to arbitration. The debtor alleges that he was hampered in defending the arbitration because Mr. Katz refused to provide the debtor with a copy of his file and because Mr. Katz provided the arbitrators with a copy only of the first retainer agreement, thereby, according to the complaint, perpetrating a fraud on the

11

"court" (presumably meaning either the arbitrators, the court that confirmed the arbitration award, or both). The complaint further alleges that the judgment confirming the arbitration award is "void" because it is "based upon an illegal contract"—specifically because the third retainer agreement contains a provision requiring Mr. Katz's consent to settle the ownership claims that were the subject of the "hourly/contingency" fee arrangement.

B.

The arbitration award in favor of Mr. Katz was confirmed and reduced to judgment by the Superior Court for the District of Columbia, on December 16, 1996, more than nine years ago, and was docketed in Virginia on January 10, 1997.[8] It is well-settled that the judgment of a state court is entitled to full faith and credit by federal courts and is *res judicata* on the validity of a creditor's claim in bankruptcy. 28 U.S.C. § 1738; *Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S.Ct. 853, 858, 90 L.Ed. 970 (1946) (holding that validity of a claim based on a state court judgment may be attacked in bankruptcy court only on the grounds of lack of jurisdiction or that the judgment was procured by fraud); *In re Wizard Software, Inc.*, 185 B.R. 512 (Bankr. E.D. Va. 1995) (holding that state court default judgment was res judicata on the amount of the creditor's claim). As this court noted in *Wizard Software*, this does not mean that a bankruptcy court, in passing on a claim, is absolutely bound by a state court

---

[8] Under the Virginia Uniform Enforcement of Foreign Judgments Act, Va. Code Ann. § 8.01-465.1 *et seq.*, an authenticated judgment of a court of the United States, or any other court which is entitled to full faith and credit, may be filed in the clerk's office of any circuit court, and, upon filing, "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court of any city or county [in Virginia] and may be enforced or satisfied in like manner." Va. Code Ann. § 8.01-465.2. In Virginia, a judgment, once entered on the judgment lien docket of the clerk's office of the circuit court, becomes a lien on all real estate of the defendant located in that city or county. Va. Code Ann. § 8.01-458.

judgment. 185 B.R. at 518. First, this court is required to give the state court judgment only such preclusive effect as it would have under state law. *Id.* And second, this court may independently determine whether "'the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party' if those issues have not already been determined by a court of competent jurisdiction." *Id.* In the absence of such circumstances, however, a state court judgment is *res judicata* on the amount of a creditor's claim. *Id.*

In this connection, the debtor points to Rule 60, D.C. Superior Court Rules of Civil Procedure, which provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void . . . The motion shall be made within a reasonable time, and *for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . . This Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.*

D.C. Sup. Ct. R. Civ. P. 60(b) (emphasis added). The debtor makes two arguments. First, that to the extent the judgment is "void," the only time limitation is one of reasonableness. Second, that even the one-year limitation for Rule 60 relief based on fraud does not limit a court's ability to entertain an "independent action" to relieve him from the judgment. To this, Mr. Katz rejoins that the relevant (and nearly identical) District of Columbia and Virginia statutes each require that any application to vacate an arbitration award "procured by corruption, fraud or other undue means" must be made within 90 days after the entry of

13

the award or 90 days after the fraud become known or should have been known. D.C. Code § 16-4311; Va. Code Ann. § 8.01-581.010. Mr. Katz also raises the same judicial estoppel and collateral estoppel arguments he made in connection with the Feldgreber note.

C.

For the same reasons already stated in connection with the Feldgreber note, the court is unable to find that the debtor's previous scheduling of the Katz judgment as undisputed, or the state court's interlocutory order rejecting the debtor's defenses and ruling that the debt was valid, bars the debtor from disputing the judgment in this bankruptcy case. But the court does agree with Mr. Katz that the present challenge, coming as it does more than 9 years after entry of a final judgment by a court with subject-matter and personal jurisdiction, is simply out of time. First, even drawing all inferences in favor of the debtor, the judgment is not void even if some parts of the underlying agreement for legal services (such as those giving the attorney a veto power over any settlement of the client's claim) would be contrary to the applicable rules of professional responsibility. The invalidity of the contract is a matter that could have been asserted as a defense in the arbitration proceeding. But such invalidity does not make the resulting arbitration award, or court judgment confirming it, void. In particular, a judgment is not "void" merely because it is or may be erroneous. *Baumlin & Ernst, Ltd. v. Gemini, Ltd*, 637 F.2d 238, 242 (4th Cir. 1980). Rather, a judgment may be vacated for voidness only if the rendering court lacked personal jurisdiction or subject matter jurisdiction, or acted in a manner inconsistent with due process of law. *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 871 (4th Cir. 1999) (construing Fed. R. Civ.

P. 60(b)(4), the language of which is identical to D.C. Sup.Ct.R 60(b)(4)). No such showing has been made here.

With respect to the alleged fraud in failing to disclose to the arbitrator or the confirming court the two modifications to the original retainer agreement,[9] the court must agree with Mr. Katz that any such claim is time-barred. Since it was the debtor himself who signed the agreements, he either knew or should have known of their existence and terms at the time of the arbitration proceeding. To the extent he may have been hampered in putting *evidence* of them before the arbitrators because Mr. Katz would not give him copies of the file, any request for assistance in obtaining the needed evidence could and should have been presented to the arbitrators. It could also have been raised as a defense to the confirmation of the arbitration award. Here, even if the one-year limitation of Superior Court Rule 60(b) rather than the 90-day limit for challenging the arbitration award applies, the present challenge comes at least 8 years too late. Additionally, although an independent action to set aside a judgment procured by fraud may not be subject to a specific limitation period, it would nevertheless, like all equitable actions, be governed by laches.[10] Here, the debtor has

---

[9] For the purpose of the present ruling, the court will accept the debtor's characterization that the modification to the original retainer agreement capped the fees the debtor could be charged at $50,000.00. The court does note, however, that the language agreement can be read not as a cap on the total *fees* to be charged for representing the debtor and OTI but rather as a cap on the *services* Mr. Katz's firm would be required to provide if it was not receiving current payment.

[10] In Virginia, the traditional jurisdiction of a court of equity to entertain an independent action "to relieve a party from any judgment or proceeding, or to grant relief to a defendant not served with process. . ., or to set aside a judgment or decree for fraud on the court" is expressly preserved by statute. Va. Code Ann. § 8.01-428(D); *See Charles v. Precision Tune, Inc.,* 243 Va. 313, 317, 414 S.E.2d. 831, 833 (1992) (explaining that statute allowing such
(continued...)

15

made no showing that he acted with reasonable diligence. He has put forth only a bald assertion, not supported by affidavit, that he did not become "aware of that [*sic*] the second retainer agreement had not been presented to the Arbitration Panel and of the full contents of the Third retainer agreement" until July 2004. Debtor's Opposition ¶ 20. The debtor has put forth nothing by way of affidavit, admissions, or otherwise, to show that he could not reasonably have known long prior to then of the terms of agreements to which he was himself a signatory or why he could not have placed evidence before the arbitration panel or the Superior Court—if only by his own testimony—that Mr. Katz had agreed to cap the fees at $50,000, if that was in fact the agreement. Nor has the put forth anything by way of affidavit, admissions, or otherwise, to show why he could not have raised before the arbitration panel or the Superior Court the illegality of a fee agreement that gave Mr. Katz veto power over any settlement or a controlling interest in the cause of action. For that reason the court concludes that the present action challenging the judgment confirming the arbitration award comes years too late and is barred by laches.

---

[10](...continued)
relief "must be given a narrow construction because 'judicial proceedings must have a certainty of result, and a high degree of finality must attach to judgments.'").

A separate order will be entered denying summary judgment with respect to Claim No. 5 (the Feldgreber note) but granting summary judgment as to the amount and validity of Claim No. 4 (the arbitration award).[11]

Date: _____         _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge

---

[11] Because the court has not yet ruled as to the Feldgreber deed of trust—which is senior in priority to the judgment lien—the court cannot make a ruling at this time as to what portion of Claim No. 4 is secured. A claim is secured in bankruptcy to the extent of the value of the collateral and is otherwise unsecured. § 506(a), Bankruptcy Code. The debtor has scheduled the property as having a fair market value of $400,000. The first deed of trust holder, Midland Mortgage Co., has filed a proof of claim in the amount of $11,514. If the Feldgreber deed of trust is allowed in the full amount claimed (i.e., $316,677), only $71,809 of the Katz judgment would be secured, and the balance would be unsecured, subject to a possible election under § 1111(b), Bankruptcy Code. On the other hand, if the amount due on the Feldgreber deed of trust is determined to be zero, as the debtor contends, then the entire amount of the Katz judgment would be secured.

           Document      Page 18 of 18

Copies to:

Thomas M. Watson, Esquire
P.O. Box 7488
Alexandria, VA  22307
Counsel for the plaintiff

Simon Ben-Ami
2021 Wingfoot Court
Reston, VA   20191
Plaintiff *pro se*

Alan Rosenblum, Esquire
Rosenblum & Rosenblum, LLC
228 South Washington Street, Suite 300
P.O. Box 19110
Alexandria, VA  22320
Counsel for the defendant

Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314