UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SIMON BEN-AMI | ) | Case No. 06-10146-SSM |
| | ) | Chapter 11 |
| Debtor | ) | |
| | ) | |
| SIMON BEN-AMI | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 06-1119 |
| | ) | |
| DANIEL KATZ | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

This is an action by a chapter 11 debtor in possession, Simon Ben-Ami, to determine the validity and extent of a judgment lien and a deed of trust, both held by Daniel Katz. Summary judgment has already been entered in favor of Katz determining that the judgment lien is valid.[1] A trial with respect to the deed of trust was held on November 14, 2006. The debtor was present in person and represented himself. Mr. Katz was present and was represented by counsel. This opinion constitutes the court's findings of fact and conclusions of law under Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure.

---

[1] *Ben-Ami v. Katz (In re Ben-Ami),* 348 B.R. 320 (Bankr. E.D. Va. 2006).

Background and Findings of Fact

Simon Ben-Ami ("the debtor") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code in this court on February 23, 2006. The case was converted to chapter 11 on June 16, 2006, and Mr. Ben-Ami remains in possession of his estate as a debtor in possession. Among the assets listed on his schedules is a townhouse located at 2021 Winged Foot Court, Reston, Virginia, valued at $400,000. The scheduled liens against the property include a judgment in favor of Katz in the amount of $194,000 and a deed of trust held by him in the amount of $138,000, both of which are scheduled as disputed. The schedules also reflect a first lien deed of trust in the amount of $13,000 and another judgment in the amount of $2,376, neither of which is disputed. Katz has filed proofs of claim asserting an amount due of $355,741.79 on the judgment and $316,676.92 on the deed of trust.

The note and deed of trust at issue were executed by the debtor and his then-wife, Shirley Ben-Ami, on November 20, 1991. The note is in the original principal amount of $138,000; is payable to Harry Feldgreber (Shirley Ben-Ami's father); provides for interest at 9% per annum; and requires monthly payments of $1,110.38 until February 1, 1993, when the entire balance became due. The note was secured by two parcels of real property: the Winged Foot Court townhouse (which was and is owned solely by the debtor) and a separate parcel located in Rockville, Maryland, where the debtor and Shirley Ben-Ami then resided, and which up until that point had been jointly owned. The circumstances surrounding the execution of the note are not entirely clear. Shirley Ben-Ami testified that the note represented money that her father had loaned the debtor for his business, while the debtor testified that it represented money—some of it used in his business and some to pay living expenses—that Mr. Feldgreber had loaned to the couple over a number of years. For reasons that are not well-explained, the

2

debtor deeded his interest in the Rockville, Maryland, marital residence to his wife as part of the transaction.

Two years later, a certificate of satisfaction, purportedly signed by Harry Feldgreber, was recorded in the Montgomery County, Maryland, land records. The certificate recites that the indebtedness secured by the Maryland deed of trust "has been fully paid and discharged." The certificate of satisfaction does not mention the Virginia deed of trust or the Virginia property, and no release has been filed in Virginia. The circumstances surrounding the certificate of satisfaction are disputed. The parties agree that the purpose of the release was to allow the debtor to borrow additional money against the Maryland property. Harry Feldgreber, unfortunately, is deceased, and is therefore unable to testify as to his intent. Indeed, Shirley Ben-Ami testified that he was already slipping into senile dementia or early-stage Alzheimer's disease as early as 1992, and she identified the purported signature of "Harry Feldgreber" on the certificate of satisfaction as her mother's (Mrs. Feldgreber's) handwriting. Additionally, the acknowledgment is irregular in naming the *notary*, rather than Mr. Feldgreber, as the person who was holder of the note and who executed the certificate of satisfaction. There seems to be no dispute, however, that Mr. Feldgreber at the very least intended to release the Maryland property and that Mrs. Feldgreber on other occasions had signed her husband's name on documents relating to their joint real estate holdings. The debtor testified that he had asked Mr. Feldgreber, not merely to release the Maryland property, but to cancel the entire indebtedness and that Mr. Feldgreber had agreed to do so. There is no independent evidence of any such discussion, however; and, as noted, Mr. Feldgreber is now deceased.

The certificate of satisfaction was prepared by an attorney in New Jersey who had represented Mr. and Mrs. Feldgreber for many years. The attorney mailed the certificate to the

3

debtor on June 23, 1993, with a cover letter stating that Mrs. Feldgreber had paid for its preparation. At the time the certificate of satisfaction was recorded, the debtor was president of a company known as Optica Technologies, Inc. At some point, the company had became embroiled in litigation and had hired Mr. Katz, an attorney practicing in the District of Columbia, to represent it. The debtor was a co-defendant in the suit and initially appeared pro se. Mr. Katz's representation was subsequently expanded to include the debtor. Although the record is not well-developed, the company evidently collapsed in the wake of the litigation. In any event, the debtor moved to Israel sometime in 1995 in an effort to improve his situation. He and Shirley Ben-Ami then separated. Somewhere in this time frame, Mr. Katz brought a law suit against the debtor for unpaid legal fees, and the dispute (at the debtor's request) went to arbitration. The resulting arbitration award in favor of Mr. Katz was confirmed and reduced to judgment by the Superior Court for the District of Columbia in 1996 and was docketed as a lien against the debtor's Virginia property in 1997.

In 2003, the debtor filed a chapter 7 petition in this court and listed the Feldgreber deed of trust as a valid lien against the Virginia property. *In re Simon Benami*, No. 03-10116-RGM (Bankr. E.D. Va. 2003). After Mr. Katz made an offer to purchase the property from the trustee, the debtor successfully moved to convert the case to chapter 11. The case was reconverted to chapter 7 and then back to chapter 11 before being ultimately dismissed in 2004. Prior to the dismissal, however, the debtor filed a chapter 11 plan and disclosure statement that treated the Feldgreber deed of trust as a valid lien against the property.

Shirley Ben-Ami testified that the debtor offered, through his son Jonathan, to purchase the note from Mrs. Feldgreber for $43,000. The debtor admits offering Mrs. Feldgreber $43,000, but testified it was to repay Mrs. Feldgreber for other loans she had made to him and

Shirley Ben-Ami, not to purchase the note. In any event, when Mr. Katz heard of the offer, he offered Mrs. Feldgreber $54,000, with payment to be made at such time as Mr. Katz recovered on the note. Mr. Katz testified that he relied on his own examination of the note and the listing of the debt as undisputed on the debtor's schedules in making the offer. He further testified that he examined the Fairfax County, Virginia, land records but did not check the Montgomery County, Maryland, land records because the Rockville property had already gone to foreclosure. In any event, Mrs. Feldgreber accepted Mr. Katz's offer and, in her capacity as personal representative of Mr. Feldgreber's estate, executed an assignment to him of the deed of trust. Mr. Katz testified that his purpose in purchasing the deed of trust was to protect his judgment lien, which was subordinate to the deed of trust.

Some time after purchasing the deed of trust, Mr. Katz started foreclosure proceedings. Mr. Ben-Ami consulted with an attorney, who wrote to the substitute trustee under the deed of trust providing a copy of the Maryland certificate of satisfaction and objecting to the sale on the ground that the underlying indebtedness had been satisfied. Mr. Katz testified that prior to that time he had no knowledge of the certificate of satisfaction, and that when he asked Mrs. Feldgreber and Shirley Ben-Ami about it, they told him they had no memory of it. The substitute trustee advised Mr. Katz to bring an equity suit in state court to resolve the issue, and Mr. Katz did so. Following a ruling in that suit striking the debtor's defenses, the debtor filed the present chapter 11 case, listing both the judgment lien and the deed of trust as disputed. The debtor then commenced the present adversary proceeding to determine the validity and extent of the judgment lien and deed of trust. Mr. Katz testified that by his calculation, the accrued interest on the note was $176,985. He also testified that he had incurred $1,691.92 in

advertising expenses and trustee's fees in the abortive foreclosure effort, for a total due on the note of $316,676.92.

## Conclusions of Law and Discussion

### I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) (2006) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. A determination of the validity and extent of a lien against property of the bankruptcy estate is a core proceeding in which a final judgment or order may be entered by a bankruptcy judge. 28 U.S.C. § 157(b)(2)(K) (2006). Venue is proper in this district. 28 U.S.C. 1409(a) (2006). The defendant has been properly served and has appeared generally.

### II.

At the outset, it is worth noting that the only issues before the court are whether Mr. Feldgreber agreed and intended in 1993 to cancel the underlying indebtedness. The debtor does not contend that he actually paid or otherwise satisfied the note, and the evidence is undisputed that Shirley Ben-Ami, the co-maker, did not pay or otherwise satisfy the note. The court has not been asked, moreover, to decide whether Mr. Katz could collect from either the debtor or Shirley Ben-Ami on the underlying note—which became due in full on February 1, 1993—given the apparent bar of the statute of limitations. *See* Md. Code Ann., Com. Law § 3-118 (2006) (6 years limitation on enforcement of promissory note); Va. Code Ann. § 8.01-246(2) (2006) (5 year limitation on enforcement of written contracts). In Virginia, however, a deed of trust can be enforced for 20 years from the date the last payment is due on the underlying obligation. Va. Code Ann. § 8.01-241. This is true even if the applicable statute of

6

limitations would bar a money judgment on the obligation itself. *Rector v. Tazewell Coal & Iron Co.*, 179 Va. 803, 808-09, 20 S.E.2d 504, 505 (1942).

The strongest evidence in the debtor's favor is of course the certificate itself, which recites not simply that the Maryland deed of trust was being released, but affirmatively represents that "the indebtedness . . . *has been fully paid and discharged*." (emphasis added). The evidentiary effect of that representation may be weakened, but is not, in the court's view, vitiated simply because Mrs. Feldgreber signed her husband's signature to the certificate or because the acknowledgment was defective. The testimony is undisputed that Mrs. Feldgreber on other occasions acted as her husband's agent in business matters. However, the fact that the certificate made reference only to the Maryland property and the Maryland deed of trust, and that no similar certificate was prepared with respect to the Virginia deed of trust or recorded in Virginia would strongly suggest that Mr. Feldgreber intended only to release the Maryland property and not to cancel the underlying indebtedness. Certainly, if the intent was to cancel the indebtedness, it is curious that the note itself was not marked "paid" or "cancelled" or given to the debtor and Shirley Ben-Ami at the time the certificate of satisfaction was delivered. The circumstances under which the certificate was executed likewise suggest that Mr. Feldgreber's intent was simply to allow the Maryland property to be used as collateral for a loan the debtor needed to keep his business afloat. That understanding is strongly buttressed by the debtor's subsequent listing of the Virginia deed of trust as undisputed on his schedules and disclosure statement in his first chapter 11 case. Although the court has declined to treat the schedules and disclosure statement in the first case as having preclusive effect in this case, they nevertheless have substantial evidentiary weight as admissions made in a judicial proceeding, and, in the case of the schedules, made under oath. The debtor's attempted explanation—that he thought he could not prove that the debt had been cancelled and had

7

forgotten about the certificate of satisfaction—is simply not credible, particularly as the debtor was represented by counsel in the first chapter 11 case.

The burden of proof is on the debtor to show that the note has been satisfied. Having considered the evidence as a whole, the court is unable to find that Mr. Feldgreber intended in 1993 to cancel the indebtedness as opposed to simply releasing the deed of trust against the Maryland residence as an accommodation to his daughter and son-in-law. Accordingly, the court concludes that the deed of trust remains a valid lien against the Fairfax property.

No evidence was presented that any payments had ever been made on the note. The balance due, therefore, is simply the unpaid principal, plus interest at the rate of 9% from November 20, 1991, though February 23, 2006, plus the foreclosure expenses. The debtor has not disputed Mr. Katz's interest computation or his entitlement to the prepetition foreclosure expenses. Accordingly, the court determines that the balance due on the note as of the date of the filing of the bankruptcy petition is $316,676.92.

A separate judgment will be entered consistent with this opinion.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

8

Copies to:

Simon Ben-Ami
2021 Wingfoot Court
Reston, VA   20191
Plaintiff *pro se*

Alan Rosenblum, Esquire
Rosenblum & Rosenblum, LLC
228 South Washington Street, Suite 300
P.O. Box 19110
Alexandria, VA   22320
Counsel for the defendant

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA   22314